No. 19,558.

THE KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY COMPANY, *Appellant,* v. CHARLES H. SESSIONS, as Secretary of State, etc., *Appellee.*

SYLLABUS BY THE COURT.

DOMESTIC CORPORATION—*Tax upon Right of Corporate Existence—Tax Based upon Capital Stock.* A state may impose upon the franchise of corporate existence of a domestic corporation a tax measured by the amount of its capital stock, notwithstanding a large part of its business may consist of interstate commerce.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed April 10, 1915. Affirmed.

*R. R. Vermilion,* and *W. F. Lilleston,* both of Wichita, for the appellant; *W. F. Evans,* of St. Louis, Mo., of counsel.

*S. M. Brewster,* attorney-general, for the appellee; *W. P. Montgomery,* and *F. P. Lindsay,* both of Topeka, of counsel.

STATEMENT.

This case, and others of a similar character, involve the validity of a statute requiring corporations to file annual reports and to pay certain annual fees. The provisions of the statute, so far as they are important to the decision of that question, follow:

"SECTION 1. Every corporation organized under the laws of this state, for profit, shall make a report in writing to the secretary of state annually on or before March 31st, showing the condition of the corporation at the close of business on the 31st day of December next preceding the date of filing and in such form as the secretary of state may prescribe, containing the following facts:

1. The name of the corporation.

2. The location of its principal office.

3. The name of the president, secretary, treasurer and members of the board of directors, with post-office address of each.

4. The date of the annual election of officers of such corporation.

5. The amount of authorized capital stock and the par value of each share.

6. The amount of capital stock authorized, the amount of capital stock issued and paid up.

7. The nature and kind of business in which the company is engaged and its place or places of business.

8. A complete and detailed statement of the assets and liabilities of the corporation.

9. A complete list of stockholders, with the post-office address of each and the number of shares held by each.

10. The change or changes, if any, in the above particulars made since the last annual report.

Such report shall be signed and sworn to before an officer duly authorized to administer oaths, by the president or vice-president and secretary or general manager of the corporation, and forwarded to the secretary of state. At the time of filing such annual report it shall be the duty of every corporation, for profit, or for carrying on any kind of business incorporated under the laws of this state to pay to the secretary of state an annual fee as follows: When the paid-up capital stock of the corporation does not exceed ten thousand dollars such annual fee shall be ten dollars; when

Railway Co. v. Sessions.

the paid-up capital stock exceeds ten thousand dollars but does not exceed twenty-five thousand dollars the annual fee shall be twenty-five dollars; when the paid-up capital stock exceeds twenty-five thousand dollars but does not exceed fifty thousand dollars the annual fee shall be fifty dollars; when the paid-up capital stock exceeds fifty thousand dollars but does not exceed one hundred thousand dollars the annual fee shall be one hundred dollars; when the paid-up capital stock exceeds one hundred thousand dollars but does not exceed two hundred and fifty thousand dollars the annual fee shall be one hundred twenty-five dollars; when the paid-up capital stock exceeds two hundred and fifty thousand dollars but does not exceed five hundred thousand dollars the annual fee shall be two hundred and fifty dollars; when the paid-up capital stock exceeds five hundred thousand dollars but does not exceed one million dollars the annual fee shall be five hundred dollars; when the paid-up capital stock exceeds one million dollars but does not exceed two million dollars the annual fee shall be one thousand dollars; when the paid-up capital stock exceeds two million dollars but does not exceed three million dollars the annual fee shall be fifteen hundred dollars; when the paid-up capital stock exceeds three million dollars but does not exceed five million dollars the annual fee shall be two thousand dollars; when the paid-up capital stock exceeds five million dollars, the annual fee shall be two thousand five hundred dollars.

"SEC. 2. Every foreign corporation, for profit, now or hereafter doing business in this state, and owning or using a part or all of its capital in this state, and subject to compliance with the laws relating to the admission of foreign corporations to do business in Kansas, shall make a report in writing to the secretary of state, annually, on or before March 31st, showing, in such form as the secretary of state may prescribe, the following facts as of the 31st day of December next preceding the date of filing:

1. The name of the corporation, and under the laws of what state or country organized.

2. The location of its principal office.

3. The names of the president, secretary, treasurer, and members of the board of directors, with the post-office address of each.

4. The date of the annual election of officers.

5. The amount of authorized capital stock, and the par value of each share.

6. The amount of capital stock issued, and the amount of capital stock paid up.

7. The nature and kind of business in which the company is engaged and its place or places of business, both within and without the state of Kansas.

8. The name and location of its office or offices in Kansas, and the name and address of the officers or agents of the company in charge of its business in Kansas.

9. The value of the property owned and used by the company in Kansas, where situated, and the value of the property owned and used outside of Kansas and where situated.

10. A statement of the assets and liabilities of the corporation.

11. The change or changes, if any, in the above particulars made since the last annual report.

Such report shall be signed and sworn to before an officer duly authorized to administer oaths, by the president or vice-president and secretary or general manager and forwarded to the secretary of state. Upon the filing of such report the secretary of state, from the facts thus reported and any other facts coming to his knowledge bearing upon the question shall determine the proportion of the issued capital stock of the company represented by its property and business in Kansas, and shall charge and collect from such company, in addition to the initial fees, for the privilege of exercising its franchise in Kansas, an annual fee upon that proportion of such foreign corporation's issued capital stock as is devoted to its Kansas business and to be not less than ten dollars in any case, as follows: When the issued capital stock of the corporation used in Kansas does not exceed ten thousand dollars such annual fee shall be ten dollars; when the issued capital stock used in Kansas exceeds ten thousand dollars but does not exceed twenty-five thousand dollars the annual fee shall be twenty-five dollars; when the issued capital stock used in Kansas exceeds twenty-five thousand dollars but does not exceed fifty thousand dollars the annual fee shall be fifty dollars; when the issued capital stock used in Kansas exceeds fifty thousand dollars but does not exceed one hundred thousand dollars the annual fee shall be one hundred

dollars; when the issued capital stock used in Kansas exceeds one hundred thousand dollars but does not exceed two hundred and fifty thousand dollars the annual fee shall be one hundred and twenty-five dollars; when the issued capital stock used in Kansas exceeds two hundred and fifty thousand dollars but does not exceed five hundred thousand dollars the annual fee shall be two hundred and fifty dollars; when the issued capital stock used in Kansas exceeds five hundred thousand dollars but does not exceed one million dollars the annual fee shall be five hundred dollars; when the issued capital stock used in Kansas exceeds one million dollars but does not exceed two million dollars the annual fee shall be one thousand dollars; when the issued capital stock used in Kansas exceeds two million dollars but does not exceed three million dollars the annual fee shall be fifteen hundred dollars; when the issued capital stock used in Kansas exceeds three million dollars but does not exceed five million dollars, the annual fee shall be two thousand dollars; when the issued capital stock used in Kansas exceeds five million dollars the annual fee shall be two thousand five hundred dollars.

"SEC. 5.  In case any corporation required to file the report and pay the fee prescribed in sections one and two of this act shall fail or neglect to make such report within the period prescribed in said sections, respectively, such corporation shall be subject to a penalty of one hundred dollars, and an additional penalty of five dollars per day for each days omission after the time limited in this act for filing such report and paying such fee.  Such penalty and the annual fee or fees required to be paid by the provisions of sections 1 and 2 of this act may be recovered by an action in the name of the state and on collection the fee shall be paid into the state treasury to the credit of the general revenue fund, and the penalty or penalties when collected shall be paid into the county school fund.

"SEC. 6.   On complaint of the secretary of state that any corporation has failed to pay the annual fees prescribed by this act, it shall be the duty of the county attorney, or the attorney general, to institute such action in the district court of Shawnee county, Kansas, or of any county in which such corporation has an office or place of business.  The failure of any domestic corporation to file the annual statement and to pay the annual fee herein provided for within ninety days

of the time for filing and paying the same shall, in addition to other penalties, work the forfeiture of the charter of such corporation organized under the laws of this state and the Charter Board may at any time thereafter declare the charter of such corporation forfeited; and upon the declaration of any such forfeiture it shall be the duty of the attorney general to apply to the district court of the proper county for the appointment of a receiver to close out the business of such corporation. The failure of any foreign corporation to file such annual statement as heretofore provided within ninety days from the time provided for filing the same shall work a forfeiture of its right or authority to do business in this state and the Charter Board may at any time thereafter declare such forfeiture and **shall forthwith** publish such declaration in the official state paper. This section shall not be construed to restrict the state from invoking any other remedies provided by existing laws.

"Sec. 8. Any corporation shall have the right to be heard by the secretary of state upon the matter of determination of the amount of fees due under the provisions of this act. Any corporation aggrieved by the decision of the secretary of state may, within ten days, appeal to the governor, the attorney general and the state bank commissioner, whose decision in the matter shall be final.

"Sec. 9. If any corporation is aggrieved at the amount of the fee exacted of it under this act it may pay the same under protest, and such fee shall be kept by the secretary of state in a special fund, and the corporation may bring suit in the district court of Shawnee county, Kansas, to recover said fee or such part of it as may be just and equitable, but in no such case shall any costs be allowed, nor shall the secretary of state suffer any personal liability. After any such suit is determined, any balance of such fee remaining with the secretary of state shall be turned into the state treasury for the benefit of the general revenue fund.

"Sec. 10. [As amended by Laws 1913, ch. 136, § 1.] All educational, religious, scientific and charitable corporations and all banking, insurance, building and loan associations or corporations and all corporations which are not organized or operated for pecuniary profit which

are not doing business for pay, are exempt from the provisions of this act; provided, that no other corporations doing business in this state shall be exempt; and provided further that building and loan associations in order to secure such exemptions must list for taxation all mortgages by them owned in excess of capital stock." (Laws 1913, ch. 135.)

The opinion of the court was delivered by

MASON, J.: The Kansas City, Fort Scott & Memphis Railway Company, a corporation organized under the laws of this state, paid under protest to the secretary of state in March, 1914, $2500, the sum required of it by the terms of the statute set out in the foregoing statement. (Laws 1913, ch. 135, § 1.) It then brought action in the district court to recover the amount, and being denied relief, appeals.

The plaintiff, a carrier doing interstate as well as local business, insists that the charge exacted of it is illegal because it places a burden upon interstate commerce, and upon property outside of Kansas. The fee collected is a tax upon the right of corporate existence— the franchise granted by the state to be a corporation— to do business with the advantages associated with that form of organization. It is measured by the amount of paid-up stock, although not directly proportioned to it, the percentage being graduated up to a capital of $5,000,000, no increase being made after that amount is exceeded. The plaintiff argues that the tax is one imposed upon interstate commerce, and upon property beyond the jurisdiction of Kansas, inasmuch as its size is regulated by the amount invested in a business a large part of which is carried on outside of the state, and between different states.

A corporation may be required by the state which created it to pay a tax upon the privilege of corporate existence which it has so obtained, notwithstanding it may be engaged in interstate commerce. Cases supporting that doctrine are collected and classified in a

Note in 57 L. R. A. 79. The natural and obvious way of determining the amount of such a tax is to fix it with reference to the capital stock, which in a way measures the extent of the power conferred. That is the method ordinarily pursued. (37 Cyc. 817, Note 58.) It does not necessarily afford an accurate measure of the relative value of the right which is taxed, but it affords a practical basis for a reasonable approximation. To distinguish between the amount of the capital which is invested locally and that used abroad, or in interstate business, would be to apportion the tax according to the business done and not according to the capacity to do business in a particular way, which is the essence of the thing taxed. If such a distinction were necessary it would follow that a company engaged solely in interstate commerce could not be required to pay any tax whatever upon its franchise to exist as a corporation.

In *State Tax on Railway Gross Receipts*, 82 U. S. 284, the court upheld a state tax upon the gross receipts of a carrier, derived in part from interstate commerce, upon two grounds. One was that the receipts had become mingled with the general property of the state, a ground which was afterwards held to be untenable. (*Phila. Steamship Co. v. Pennsylvania*, 122 U. S. 326.) The other ground was thus expressed:

"It is not to be questioned that the States may tax the franchises of companies created by them, and that the tax may be proportioned either to the value of a franchise granted, or to the extent of its exercise; nor is it deniable that gross receipts may be a measure of proximate value, or, if not, at least of the extent of enjoyment." (82 U. S. 296.)

Upon this proposition the Gross Receipts case was distinguished and not overruled, the court saying:

"The second ground on which the decision referred to was based was, that the tax was upon the franchise of the corporation granted to it by the state. We do not think that this can be affirmed in the present case.

Railway Co. v. Sessions.

It certainly could not have been intended as a tax on the corporate franchise, because, by the terms of the act, it was laid equally on the corporations of other states doing business in Pennsylvania." (122 U. S. 342.)

There is obviously a good basis, however, for distinguishing between a tax upon the gross receipts of an interstate carrier and a tax upon its corporate entity, graded according to its capital stock. In *Henderson Bridge Company v. Kentucky*, 166 U. S. 150, the court sustained a tax imposed by the state of Kentucky upon the "intangible property" of a corporation owning an interstate bridge, saying: "The only franchises treated here as the subject of taxation were those granted by the State of Kentucky." (p. 154.) A vigorous dissent, based on the contrary view, was written by Mr. Justice White, who said: "I can not bring my mind to the conclusion that the tax is only levied on the mere franchise to exist as a corporation conferred by the State of Kentucky." (p. 166.) Clearly, if the dissenting justices could have accepted that view of the matter, their objection to the decision would have been removed. In *Atlantic &c. Tel. Co. v. Philadelphia*, 190 U. S. 160, the general rule was again declared, that "The franchise of a corporation, although that franchise is the business of interstate commerce, is, as a part of its property, subject to state taxation, providing at least the franchise is not derived from the United States." (p. 163.)

In *Western Union Tel. Co. v. Kansas*, 216 U. S. 1, it was said:

"If a domestic corporation engaged in the business of soliciting orders for goods manufactured, sold and delivered in a State, should, in addition, solicit orders for goods manufactured in and to be brought from another State for delivery, could the former State make it a *condition* of the right to engage in local business within its limits that the corporation pay a given per cent of *all* fees or commissions received by it in its business, interstate and domestic? There can be but

one answer to this question, namely, that such a condition would operate as a direct burden on interstate commerce, and therefore would be unconstitutional and void. Consistently with the Constitution no court could, by any form of decree, recognize or give effect to or enforce such a condition." (p. 36.)

As already suggested, for the state to assess a tax gauged by the total capital stock, upon the right to exist as a corporation, which it has granted, is a very different thing from requiring a business to pay the state a percentage of what it earns by each transaction undertaken, some of them being of an interstate character. A tax measured by the capital stock may in some situations be equivalent to a charge upon the whole business done, while in others it is not. In the case just quoted from, the statute which was held void undertook to require a foreign corporation, as a condition to doing a purely local business in Kansas, to pay a fee fixed by a graduated percentage of its total capital stock, which was largely employed in business elsewhere, and in interstate commerce. There was no logical connection between the amount charged and the extent or value of the business done wholly within the state—the only matter over which the state had control. Here the amount of the tax has a direct relation to the scope and value of the privilege conferred and controlled by the state—the right to be a corporation.

We find nothing in the cases referred to or elsewhere that denies the power of a state to tax all domestic corporations, including those engaged in interstate commerce, upon their right of corporate existence, regulating the amount in the usual manner, by their capital stock. We conclude that such power exists, and that the statute in question is not subject to the objections stated.

The judgment is affirmed.

DAWSON, J., not sitting.