## In re DETROIT & WINDSOR FERRY CO.

CORPORATIONS—FRANCHISE FEE—TAXATION—FOREIGN COMMERCE—CONSTITUTIONAL LAW.

The specific tax authorized by Act No. 85, Pub. Acts 1921, as amended by Act No. 233, Pub. Acts 1923, to be levied annually upon corporations as a condition to doing business as such in this State, was properly levied upon a Michigan corporation whose property is located in Michigan, although its principal business is foreign commerce; said act in no way interfering with foreign commerce, and not being in violation of any of the provisions of the Federal Constitution.[1]

[1]Commerce, 12 C. J. §§ 153 (Anno), 154 (Anno).

Certiorari to Corporation Tax Appeal Board.   Submitted April 22, 1925.   (Docket No. 65.)   Decided October 1, 1925.   Rehearing denied December 22, 1925.

The Detroit & Windsor Ferry Company appealed to the corporation tax appeal board from the levy of a tax by Charles J. DeLand, secretary of State.   From an order sustaining the tax, plaintiff brings certiorari. Affirmed.

*Campbell, Bulkley & Ledyard (Wilson W. Mills* and *Edward C. P. Davis,* of counsel), for appellant.

*Andrew B. Dougherty,* Attorney General, *Clare Retan,* Deputy Attorney General, and *Donald W. Sessions,* Assistant Attorney General, for appellee.

WIEST, J.   The secretary of State levied a tax on the Detroit & Windsor Ferry Company under Act No. 85, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 11361 [1-14]), as amended by Act No. 233, Pub. Acts 1923. The company claimed it was an illegal tax, and appealed to the corporation tax board.   That board sustained the tax, and the company reviews by certiorari.

The Detroit & Windsor Ferry Company operates its ferries to Windsor and Bob-Lo, Canada, and to Belle Isle, in the State of Michigan.   The company made the report required by the act, and the secretary of State computed its tax, as prescribed by the act.

Section 4 of the act, as amended, prescribes that:

"Every corporation organized or doing business under the laws of this State, excepting those hereinafter expressly exempted therefrom, shall, at the time of filing its annual report with the secretary of State of this State, as required by section seven hereof, for the privilege of exercising its franchise and of transacting its business within this State, pay to the secre-

tary of State, an annual fee of two and one-half mills upon each dollar of its paid-up capital and surplus, but such privilege fee shall in no case be less than ten dollars nor more than fifty thousand dollars."

It is further provided in section 5 that:

"None of the property or capital, of any corporation subject to paying the privilege fee prescribed in section four, which is located without the State of Michigan, and none of the capital or surplus of such corporation represented by property exclusively used in interstate commerce, shall in any case enter into the computation of the net amount of the authorized capital, or the capital and surplus, as the case may be, upon which the computation of the privilege fees shall be made." * * *

The company assails this act as unconstitutional, for the reasons (1) Because the act is in violation of article 1, § 8, of the Constitution of the United States (the commerce clause), and (2) Because the act as to the corporation contravenes the 14th Amendment to the Federal Constitution (equal protection of the laws).

1. The ferry company is a Michigan corporation, and its property is located in Michigan. Its principal business is foreign commerce. The tax imposed is a specific tax—an excise tax. *Union Steam Pump Sales Co.* v. *Secretary of State*, 216 Mich. 261. It is not a property tax. It in no way interferes with interstate or foreign commerce.

The act makes reference to the capital and surplus and takes them into account in fixing the tax, but the reference is not for the purpose of taxing the property but to determine what is a fair price to charge for the franchise privileges. The owners of the company are at liberty at any time to operate its boats in foreign commerce as individuals without the payment of this tax. How and in what manner does this interfere with foreign commerce?

The questions presented have been ruled adversely to the company in *Kansas City, etc., R. Co.* v. *Kansas,* 240 U. S. 227 (36 Sup. Ct. 261).   There the annual fee was graduated according to the amount of paid-up capital stock.   The company was a Kansas corporation with its railway extending into several States. The railway company claimed the tax was a direct burden upon interstate commerce and laid upon property outside the State.   It was stated:

"The supreme court of Kansas sustained the tax, thus defining its nature: 'The fee collected is a tax upon the right of corporate existence—the franchise granted by the State to be a corporation—to do business with the advantages associated with that form of organization.'   *Kansas City, etc., R. Co.* v. *Sessions,* 95 Kan. 261 (147 Pac. 791)."

This was approved.   The same principle appears in *Maine* v. *Railway Co.,* 142 U. S. 217 (12 Sup. Ct. 121, 163) ; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107 (31 Sup. Ct. 342, Ann. Cas. 1912B, 1312) ; *Kansas City, etc., R. Co.* v. *Stiles,* 242 U. S. 111 (37 Sup. Ct. 58) ; *Hump Hairpin Manfg. Co.* v. *Emmerson,* 258 U. S. 290 (42 Sup. Ct. 305), and represents the uniform holding of the Federal Supreme Court.

In the last named case it was said by Mr. Justice Clarke:

"While a State may not use its taxing power to regulate or burden interstate commerce (*United States Express Co.* v. *Minnesota,* 223 U. S. 335 [32 Sup. Ct. 211] ; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135 [38 Sup. Ct. 292, Ann. Cas. 1918C, 617]), on the other hand it is settled that a State excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating Federal constitutional rights.   As coming within this latter description, taxes have been so repeatedly sustained where the proceeds

of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the cases so holding must be regarded as a settled exception to the general rule. *Maine* v. *Railway Co.*, 142 U. S. 217 (12 Sup. Ct. 121, 163); *Wisconsin & Michigan R. Co.* v. *Powers*, 191 U. S. 379 (24 Sup. Ct. 107); *Flint* v. *Stone Tracy Co.*, 220 U. S. 107 (31 Sup. Ct. 342, Ann. Cas. 1912B, 1312); *United States Express Co.* v. *Minnesota, supra; Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68 (34 Sup. Ct. 15); *Kansas City, etc., R. Co.* v. *Stiles*, 242 U. S. 111 (37 Sup. Ct. 58); *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321, 326, 327 (38 Sup. Ct. 499, Ann. Cas. 1918E, 748). The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it."

The rule forbidding a tax on interstate commerce applies with equal force to foreign commerce, but this does not aid the company, for the tax in question is not one upon interstate or foreign commerce, but a privilege tax imposed as an incident to the right to be a corporation, and exercise corporate functions by means of paid-up capital and surplus. The rule is too well settled that a State may not impose a tax upon interstate or foreign commerce to require the citation of authority. It is equally well settled that the privilege tax here involved is not one upon interstate or foreign commerce. The yardstick employed to measure the privilege tax scales the charge for corporate privileges granted and not to measure mere receipts from interstate or foreign commerce.

The objections are without force and the determination of the corporation tax appeal board is affirmed, with costs against plaintiff.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.   BIRD, J., did not sit.

### ON MOTION FOR REHEARING.

PER CURIAM.   In a motion for a rehearing plaintiff insists the opinion herein is at variance with the holding in *Union Steam Pump Sales Co.* v. *Secretary of State*, 216 Mich. 261.   We do not think so.   We stated that the tax is "but a privilege tax imposed as an incident to the right to be a corporation, and exercise corporate functions by means of paid-up capital and surplus."   To exercise corporate functions there must exist the right to be a corporation and as an incidence of the right of exercise of the corporate functions the tax is imposed.   This is not upon the right to be a corporation but upon the activities of the corporation in the exercise of its corporate functions.

The motion is denied.