VASSAN *v.* MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE
RAILWAY CO.

1. COMMERCE—STATUTES—SPECIFIC TAXES—INTERSTATE COMMERCE
   —ISSUING SECURITIES—FEDERAL STATUTES.
   There being no conflict between Act No. 91, Pub. Acts
   1911, as amended by Act No. 213, Pub. Acts 1921, author-
   izing the State tax commission to fix the specific tax to
   be paid on mortgage bonds when the property covered
   by the mortgage lies partly within and partly without the
   State, and the transportation act (41 U. S. Stat. pp. 494,
   495), conferring exclusive jurisdiction upon the interstate
   commerce commission to authorize interstate carriers to
   issue securities, it may not be said that the former statute
   is superseded by the latter.

2. SAME—STATE SPECIFIC TAX ON MORTGAGES NOT A BURDEN
   ON INTERSTATE COMMERCE.
   The specific tax upon mortgages imposed by Act No. 91,
   Pub. Acts 1911, as amended by Act No. 213, Pub. Acts
   1921, affects interstate commerce so incidentally and re-
   motely that it may not be said to be a burden upon it.

3. LICENSES—FEES EXACTED BY PUBLIC UTILITIES COMMISSION NOT
   TAXES.
   The fees exacted by the public utilities commission on ap-
   proving bond issues in pursuance of Act No. 419, Pub.
   Acts 1919, § 11, are license fees exacted under the police
   power of the State for the purpose of regulation, and do
   not become taxation unless they are out of proportion to
   the reasonable cost of regulation.

4. SAME—FEES DEMANDED NOT SO EXCESSIVE AS TO AMOUNT TO
   TAXATION.
   The fees demanded in the instant case by the public utili-
   ties commission, *held*, not so out of proportion to the
   cost of operation of the department as to amount to taxa-
   tion.

---

[1]Commerce, 12 C. J. § 140 (Anno); [2]Id., 12 C. J. § 140 (Anno);
[3]Licenses, 37 C. J. § 41; [4]Id., 37 C. J. § 41.

5. TAXATION—CONSTITUTIONAL LAW—DOUBLE TAXATION—SPECIFIC
   TAX ON MORTGAGES LEGAL.
   The levying of specific taxes on mortgages and also the
   taxation of the real estate bound by them is not double
   taxation and is legal.

Error to Schoolcraft; Fead (Louis H.), J.    Sub-
mitted October 20, 1926.    (Docket No. 51.)    De-
cided February 4, 1927.

Assumpsit by Joseph S. Vassan, treasurer of School-
craft county, against the Minneapolis, St. Paul & Sault
Ste. Marie Railway Company for a mortgage tax.
Judgment for plaintiff.    Defendant brings error.    Af-
firmed.

*Warner & Sullivan* (*John L. Erdall,* of counsel), for
appellant.

*Andrew B. Dougherty,* Attorney General, *Harry A.
Metcalf,* Assistant Attorney General, and *Virgil I.
Hixson,* Prosecuting Attorney, for appellee.

BIRD, J.    In September, 1921, the interstate com-
merce commission authorized defendant to issue bonds
in the sum of $15,000,000, secured upon real estate in
Michigan and elsewhere.    Later the public utilities
commission of Michigan approved of the same and
fixed the fees at $1,885, in accordance with section
11 of Act No. 419, Pub. Acts 1919 (Comp. Laws Supp.
1922, § 8164 [11]).    Thereafter the State tax com-
mission fixed the specific tax on the mortgage bonds at
$5,665, in pursuance of Act No. 91, Pub. Acts 1911,
as amended by Act No. 213, Pub. Acts 1921 (Comp.
Laws Supp. 1922, § 4271).    This is the tax which de-
fendant refused to pay, and, by arrangement with the
attorney general, defendant was permitted to record
its mortgage without paying the tax.    This suit was
brought to recover the amount of the tax.

⁵Taxation, 37 Cyc. p. 756; 23 L. R. A. (N. S.) 152; 26 R. C. L.
265; 4. R. C. L. Supp. 1657; 5 R. C. L. Supp. 1397.

1. Counsel contend that Act No. 91 was superseded by the transportation act, and they cite the two provisions upon which they rely:

"(2) From and after 120 days after this section takes affect it shall be unlawful for any carrier to issue any share of capital stock or any bond or other evidence of interest in or indebtedness of, the carrier * * * even though permitted by the authority creating the carrier corporation, unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the commission, of the purposes and uses of the proposed issue of the proceeds thereof, * * * the commission by order authorizes such issue or assumption. * * *

"(7) The jurisdiction conferred upon the commission by this section shall be exclusive and plenary, and a carrier may issue securities and assume obligations or liabilities in accordance with the provisions of this section without securing approval other than as specified herein."    41 U. S. Stat. pp. 494, 495.

This jurisdiction was doubtless conferred on the interstate commerce commission by congress to avoid the difficulty the interstate carriers had in obtaining the consent of the several State commissions in the States through which they pass to issue their proposed securities, and probably for the further purpose to protect the investing public from purchasing worthless stocks and bonds issued by them.    The act of congress confers exclusive authority upon the interstate commerce commission to determine what securities, if any, the railways shall issue.    The imposition of this tax in no way conflicts with that authority.    The exclusive right to control the issuance of railway securities does not carry with it the right to control the taxation of railways by the States.    There being no conflict in the respective powers we see no occasion for holding that Act No. 91 was superseded by the transportation act.

2. But it is argued that the laying of the tax and

the method of collecting it is a burden upon interstate commerce. It is not always easy to determine whether State legislation is or is not a burden upon interstate commerce. Most of the cases which have arisen are determined upon their own particular facts. Some tests, however, were recently laid down by Mr. Justice Clarke which are helpful in disposing of such questions:

"While a State may not use its taxing power to regulate or burden interstate commerce (*United States Express Co.* v. *Minnesota,* 223 U. S. 335 [32 Sup. Ct. 211]; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135 [38 Sup. Ct. 292, Ann. Cas. 1918C, 617]), on the other hand it is settled that a State excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating Federal constitutional rights. As coming within this latter description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the cases so holding must be regarded as a settled exception to the general rule. *Maine* v. *Railway Co.,* 142 U. S. 217 (12 Sup. Ct. 121, 163); *Wisconsin & Michigan R. Co.* v. *Powers,* 191 U. S. 379 (24 Sup. Ct. 107); *Flint* v. *Stone Tracy Co.,* 220 U. S. 107 (31 Sup. Ct. 342, Ann. Cas. 1912B, 1312); *United States Express Co.* v. *Minnesota, supra; Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68 (34 Sup. Ct. 15); *Kansas City, etc., R. Co.* v. *Stiles,* 242 U. S. 111 (37 Sup. Ct. 58); *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 326, 327 (38 Sup. Ct. 499, Ann. Cas. 1918E, 748). The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it."

*Hump Hairpin Manfg. Co.* v. *Emmerson,* 258 U. S. 290 (42 Sup. Ct. 305).

See, also, *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 696 (15 Sup. Ct. 268, 360) ; *In re Detroit & Windsor Ferry Co.,* 232 Mich. 574.

The specific tax imposed by Act No. 91, as amended, is in no sense a direct tax upon interstate commerce. The payment of the tax is not a condition precedent to the operation of its line of railway. The State offers no objection or hindrance to the issuance of any mortgage it chooses to issue. It is at liberty to issue its mortgage to a trust company of New York, Detroit, or St. Paul, and it will be valid so far as the legislation of this State is concerned, but the State says, in substance, to the railways, if you are desirous of having the benefit of the recording laws of the State you must first have the mortgage approved and pay the tax. The State does not compel the railroad to have its mortgage recorded. But counsel argue that the railway could not sell its bonds if its mortgage be not recorded. This, then, is a requirement imposed by the investing public and one not imposed by the State. The investing public may require many things the State would not be responsible for. Counsel also say the denial of the right to enforce the payment of the mortgage on foreclosure in our courts unless the tax is paid is an unlawful restriction. That question is not involved in the present proceedings. In the future, if that question should arise, the court will give it due consideration. We think the imposition of the tax and the methods of enforcement fall squarely within the foregoing test of Justice Clarke in that it affects interstate commerce so incidentally and remotely as not to be a burden upon it.

3. The further claim is made that the act results in double taxation because of the exaction of fees by the Michigan public utilities commission, and the laying

of the specific tax under Act No. 91. The fees exacted by the public utilities commission are not a tax. They are license fees exacted under the police power of the State for the purpose of regulation. The license confers a privilege on the railways which they have no right to exercise without it. *Chilvers* v. *People,* 11 Mich. 43. It is not a revenue measure and the fees exacted do not become a tax unless they are out of proportion to the reasonable cost of regulation. 1 Cooley on Taxation (4th Ed.), § 27. We see nothing in the amount demanded as fees in this case that lead us to the belief that they are out of the range of the cost of the operation of the department. The levying of the specific tax on a mortgage against the owner of the real estate was considered in *Nelson* v. *Breitenwischer,* 194 Mich. 33, and declared to be legal and not double taxation. *Stumpf* v. *Storz,* 156 Mich. 228 (23 L. R. A. [N. S.] 152, 132 Am. St. Rep. 521).

Other errors have been considered, but we find no reason to disagree with the conclusions of the excellent opinion filed by the trial judge in granting the county relief.

The decree is affirmed, with costs of both courts to plaintiff.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.