MIDDLESEX TRANSPORTATION COMPANY

*v.*

THE PENNSYLVANIA RAILROAD COMPANY.

[Submitted December 4th, 1913.    Decided December 4th, 1913.]

1. The rule that a demurrer to a bill in equity confesses as true all matters that are well pleaded is subject to the exception that, when facts are averred which run counter to facts of which the court takes judicial notice, the averments will be disregarded.

2. Though a canal with a basin attached is a public highway, it is nevertheless a highway of a particular kind, with natural limitations on its functions and subject to reasonable regulations and control, so that the policy of those operating it of closing it to navigation during the winter season is not an unlawful invasion of the rights of the users.

3. Judicial notice is taken of the seasons and their natural influences on material things, including the fact that canals in New Jersey are closed to navigation in the winter.

4. Complainant transportation company operating boats through defendant's canal is not entitled to restrain the closing of a basin, operated in connection with the canal, where complainant docked its boats, during specified winter months, prior to a determination at law that defendant owed complainant the duty to keep the basin open during such season.

5. Whether equity has jurisdiction may be raised by demurrer to the bill.

6. Where complainant operated boats through defendant's canal, but had no different rights therein than were common to the public in general, it could not maintain a bill to enjoin the closing of a basin attached to the canal during certain winter months on the ground that the obstruction was a public nuisance.

7. Where complainant operated boats through 'defendant's canal, and defendant threatened to close a portion of the canal during certain winter months, which complainant alleged would result in a loss to it of at least $500 a day, complainant had an adequate remedy at law by application to the board of public utility commissioners as provided by *P. L. 1911 p. 374,* or by *mandamus,* or by action for damages, in the absence of any question as to defendant's ability to respond, and hence was not entitled to enjoin the closing of the canal.

8. Where, on demurrer to a bill, it appeared that, taking the charges as true, the bill would be dismissed on final hearing, the demurrer would be sustained and the bill dismissed.

On demurrer to bill.

*Mr. George S. Silzer,* for the complainant.

*Mr. Theodore Strong,* for the defendant.

BACKES, V. C.

The object of this bill is to compel the defendant to maintain and operate a part of the Delaware and Raritan canal at New Brunswick, during the winter season until the elements make it impossible.

The bill was filed January 7th, 1913, and avers that the complainant is a common carrier of freight by boat between New Brunswick and New York, and carries approximately three hundred tons of freight daily. Its dock at New Brunswick, of about four hundred feet in length, is located on what is known as the lower basin of the canal, and was built in 1912. This basin is about a mile in length, about one hundred and twenty-five feet in width and extends from the upper lock of the canal proper to an outlet lock into the Raritan river, where the tide ebbs and flows to a rise and fall of about six feet. · A tow-path divides it from the river. In the use of the basin, the boats of the complainant pass under a draw-bridge at Albany street and through the outer lock into the Raritan river, both of which are operated by employes of the defendant, free of charge. The use of the basin is also free. The basin is a continuation of the Delaware and Raritan canal, which commences at Bordentown and ends at the upper lock, and is operated by the defendant, tolls being paid for its use. Notice was served on the complainant by the defendant that the canal proper would be closed on December 20th, 1912. It was not closed, but continued to remain and was open for use at the time the bill was filed. The complainant was informed by the bridge and lock tenders, employes of the defendant at the outlet-lock and Albany street bridge, that their employment would cease on January 1st, 1913. The complainant received notice on January 6th, 1913, that the water would be withdrawn from the lower basin on the following day, as soon as the boats of the complainant passed out of the basin. The

552 CASES IN CHANCERY, 1913.

Middlesex Transp. Co. *v.* Pennsylvania R. R. Co. 82 *Eq.*

basin can be used at any and all times until the weather becomes extremely cold and heavy layers of ice are formed. The defendant threatened to close the basin to the use of the complainant, and that it would probably remain closed until March 17th, the usual time when the same is opened. The closing of the basin would cause a loss to the complainant of approximately $500 a day. The defendant gave as an excuse for the closing of the basin, that it is necessary to inspect and repair the wickets of the lock once in each four years. There are two locks at the outlet-lock, one of which the defendant has permitted to fall into disuse and that if the same were in repair and in full service, one lock could be used while the other was being repaired. There is no reason for closing the basin, and that whatever repairs are necessary can be made after the basin would be closed by reason of the extreme cold weather. No right exists in the defendant to close the basin; that the same is a public highway to which the public has a free and open use at all times. The defendant has never received the right to close the said highway. The basin is maintained for the convenience of the defendant, subject to the free and uninterrupted use thereof of persons desiring to use the same as such public highway. The complainant has been in business about eight years, and during former seasons when the basin was closed, it operated its boats from docks of the defendant company located on the Raritan river, which were torn down in the fall of 1911. There was a winter season when the canal and basin were closed, when the boats of the complainant did not lose a single trip and at other times many trips were made after the complainant was barred from the canal basin. The defendant pretends that it is necessary to close the basin for repairs and for other purposes, which is untrue. It is not necessary at this time (the time of the filing of the bill), or at any time, for the defendant to close the lower basin, and it is only necessary that the same should be closed when closed by the elements. The bill prays that the defendant be decreed to keep the lower basin open for the use of the complainant's boats until the same is closed by the elements, and for an injunction to prevent the defendant from closing the basin to the use of the complainant, and that the defendant may be decreed to open

and close the outlet-lock and the draw-bridge when necessary, for the complainant's boats to pass through the same. This recital of the bill is almost *verbatim.*

The canal, I assume, is the one built pursuant to an act to incorporate the Delaware and Raritan Canal Company, passed February 4th, 1830 (*P. L. 1830 p. 73*), by that company, and I also assume that the Pennsylvania Railroad Company is operating it as lessee, although as to both of these matters the bill is silent.

The defendant filed a general demurrer to the prayer for discovery and relief, and assigned as special causes that the complainant has an adequate remedy at law, and that its right to relief must be first established by a judgment in an action at law, before it can be recognized or enforced in this court.

(1) It will be observed that the bill alleges that the canal basin is a public highway and that there is no need or reason for closing, and that the defendant has not the lawful right to close it during the winter season; and inasmuch as it is the rule that a demurrer confesses to be true all matters which are well pleaded, it is claimed that the defendant is therefore concluded by these averments. But there is this exception to the rule: that when facts are averred which run counter to facts of which the court takes judicial notice, the averments will be disregarded. *Dan. Ch. Pr. 546.*

(2) It is fairly inferable from the bill that the defendant's uniform course has been to interrupt navigation during the winter months, and that the threatened pursuit of this practice in the present year is the wrong complained of. The good faith of the defendant in the doing of this is not assailed. The contention is that to enforce any regulation in the use of the canal, no matter how needful in the conservation of the defendant's property, or reasonable in anticipation of zero weather, which would prevent navigation at a time short of the action of the elements, would be an unlawful invasion of the complainant's rights. That the canal, as well as the lower basin, which is a part of the canal, is a public highway, is declared by the act of incorporation and has been settled by the authorities in this state. *Barnelt* v. *Johnson, 15 N. J. Eq. (2 McCart.) 481; Morris Canal and Banking Co.* v. *Fagan, 18 N. J. Eq. (3*

554     CASES IN CHANCERY, 1913.

Middlesex Transp. Co. *v.* Pennsylvania R. R. Co.     *82 Eq.*

*C. E. Gr.*) *215; Bonaparte* v. *Camden and Amboy Railroad Co., Baldwin 205.* It is, however, a public highway of a peculiar kind, with natural limitations upon its functions, and subject to reasonable regulations and control. The single circumstance of the use of water as the means of transportation repels the idea that a canal is to be maintained as a public highway during a season of the year when the use of that commodity is usually destroyed by the forces of nature, and it must be recognized that the policy of closing a canal to navigation during the winter season is well within the rights of the management. Judicial notice is taken of the seasons and their natural influences upon things material, and it seems to me that the defendant's regulation of closing its canal during the winter months finds its warrant and justification in the likely effect the elements would otherwise have upon its property and operations during that period.

(3) But even though I should regard the defendant's administration as open to judicial attack, I am unable to discover a disturbance of any legal right of the complainant which this court may notice or redress, or any equitable grounds upon which its jurisdiction may be invoked. No statutory duty is involved. The grievance complained of is simply a threatened invasion of an asserted legal right and the relief sought is the protection of that right, which right to protection is, as a matter of law, not clear and settled, and must, before it can receive vindication here, be first established in the law courts. "A court of equity may interpose, under some circumstances, to protect a legal right, as when a violation is threatened or is being actually committed, which will do irreparable damage, but it must be made clearly to appear that the complainant has the right he claims, for if he is without right, the court is without jurisdiction. There can be no damage, irreparable or otherwise, where there is no violation of a right. To justify the interference of a court of equity in such a case the legal right set up by the complainant must be clear, for, as was said by Mr. Justice Dixon, speaking for the court of errors and appeals, in *Outcalt* v. *George W. Helme Co., 42 N. J. Eq. (15 Stew.) 665,* where the question is one of legal right, a condition precedent to

the right of the complainant to bring his adversary into a court of conscience is that the latter's conduct, which is claimed to be wrongful, shall appear to be unconscientious, and that this cannot be shown, unless it is made to appear that the defendant has violated a legal right which had been previously established against him by a judgment at law, or which, on the admitted facts of the case, appears to be free from doubt or question. The complainants do not complain that the defendants have invaded their property, and are there wantonly committing great and serious damage, nor that the defendants are so using their own property as to cause irreparable injury to the complainants' property, but their complaint is that the defendants refuse to give them such use of their (the defendants) property and servants as they are entitled to by law, and that they suffer irreparable harm in consequence. What the complainants want is that the court shall, for their benefit, control the defendants not only in the use of their property, but in the conduct of their business. Nothing short of a case of the most extreme necessity, where the legal right is entirely free from doubt, the injury great and ruinous, and the defendants' conduct wholly indefensible, would justify the exercise of so strong a power by any judicial tribunal." *Delaware, &c., Railroad Co.* v. *Central Stock Yard and Transit Co., 45 N. J. Eq. (18 Stew.) 50* (at *p. 65*); *46 N. J. Eq. (1 Dick.) 280.* The discussion of the principle and the facts in the case cited is singularly apposite to, and entirely dispositive of, the case made by the complainant's bill. Vice-Chancellor Garrison in *Jacquelin* v. *Erie Railroad Co., 69 N. J. Eq. (3 Robb.) 432,* illuminating the rule that the complainant's legal right must be clear before equity can intervene, says: "I understand that what is meant by this rule is not that the precise question has ever been settled by the courts of law of this state, but that the precise principle has been thus settled. The broad general principle has undoubtedly been settled in this state that common carriers are under a legal duty to serve the public, and in cases where, under their charters or under the statutes, a duty is manifested, the courts will compel them to perform such duty. But the complainants in this case must go much further than this, and must demonstrate that the

556 CASES IN CHANCERY, 1913.

Middlesex Transp. Co. v. Pennsylvania R. R. Co. 82 Eq.

courts in this state have established the principle that at common law and in default of legislation a court of law will hold it to be the duty of a common carrier to locate stations at such points as the court shall determine, or at least not to discontinue stations at points where the court shall determine that they should remain. The complainants must show that our courts have established a principle which does not stop short of holding that the whole matter of regulating the method, manner, kind and quantity of service that common carriers shall render the public has, in cases in which the legislature has made no provision, been committed to the courts for determination and decision." *Fritts* v. *Delaware, &c., Railroad Co.*, 75 N. J. Eq. *(5 Buch.)* 384.

(4) The objection of the complainant that the question of jurisdiction cannot be raised upon demurrer, is unsubstantial. *Dan. Ch. Pr.* 549; *Story Eq. Pl.* § 472; *Mitf. Pl.* 89; *Rothholz* v. *Schwartz*, 46 N. J. Eq. *(1 Dick.)* 477.

(5) On the argument the complainant's counsel urged that the defendant's threatened conduct to void the basin, even temporarily, would be an obstruction to a public highway and a public nuisance, which a court of equity will enjoin. If we should entertain the allegations of the bill in this narrow and restricted view, which is altogether inadmissible, it cannot avail the complainant, because it fails to show some special injury peculiar to itself, aside from and independent of the general injury to the public. The right which the complainant has in the use of the canal arises out of the defendant's legal duty to furnish means of transportation over the highway to the public, and this right and duty is not enlarged because the complainant's landing place is located upon the defendant's canal basin. It does not appear by the bill under what circumstances the complainant chose to put its dock at this point, and in the absence of allegations, it is not to be assumed that any additional rights or duties flow from this circumstance; and it follows that the wrong to be suffered by the complainant will be to its right of navigation in common with the public at large and for which it cannot have redress. *High Inj. (4th ed.)* § 762; *Hinchman* v. *Paterson Horse Railroad Co.*, 17 N. J. Eq. *(2 C. E. Gr.)* 75;

*Allen* v. *Board of Chosen Freeholders, 13 N. J. Eq. (2 Beas.) 68; Zabriskie* v. *Jersey City and Bergen Railroad Co., 13 N. J. Eq. (2 Beas.) 314; Humphreys* v. *Eastlack, 63 N. J. Eq. (18 Dick.) 136.*

(6) The complainant has a complete and adequate remedy at law. Recourse may be had to the board of public utility commissioners (*P. L. 1911 p. 374*), or to proceedings by *mandamus,* possibly upon its own relation or maybe as a relator in the name of the attorney-general. *Jacquelin* v. *Erie Railroad Co., supra.* An action for damages will furnish full relief. · The apprehended invasion of the complainant's right will not involve an irreparable injury. The injury is not of a permanent, continuous or recurring nature. *Rogers, &c., Works* v. *Erie Railway Co., 20 N. J. Eq. (5 C. E. Gr.) 379; Barnett* v. *Johnson, supra.* In so far as the bill discloses, it is of a most temporary and transient kind. The averment is that the defendant threatens to close the basin, between the time·of the filing of the bill and March 17th, then next. It is true that the complainant alleges that the defendant gave "as an excuse for the closing of said lower basin, that it is necessary to inspect and repair the wickets on said lock once in each four years;" but this meagre statement does not amount to an averment that the defendant threatens to again close the basin four years hence. That the closing of the basin will destroy or even diminish the complainant's trade is not averred, nor is it to be implied. It may be that in the carrying on of its trade as a forwarder, the complainant will be obliged to dock its boats at some other point along the Raritan river at New Brunswick, which may be less convenient and involve costs of additional hauling, but this loss can be readily ascertained in dollars and cents. In fact, the bill measures the complainant's anticipated loss at the sum of $500 a day. No question is raised as to the ability of the defendant to respond. In the case of *Sperry & Hutchinson Co.* v. *Hertzberg, 69 N. J. Eq. (3 Robb.) 264,* Vice-Chancellor Stevenson said: "It is not alleged that the defendant is not fully responsible for any amount of damages which the complainant could possibly recover against him in an action at law. While the defendant's operations may cause damage to the complainant in

its business, there is nothing to justify the apprehension that such damage will be permanent or so extensive during the period which will be required for the ascertainment at law of the complainant's right as to make the complainant's compensatory recovery at law, in case he secures one, in any degree inadequate. The fact that the damages of the complainant may be difficult of ascertainment, and the fact that the defendant's conduct, if illegal, amounts to a continuous violation of the complainant's rights, are not circumstances which can be recognized in this court, as the law stands to-day, as taking the case out of the operation of the well-settled general rule."

(7) It being an absolute, certain and clear proposition that taking the charges in the bill to be true, the bill would be dismissed on final hearing (*Vail's Executors* v. *Central Railroad Co., 23 N. J. Eq. (8 C. E. Gr.) 466*), the demurrer will be sustained and the bill dismissed, with costs.