[No. 22980.   Department Two.   May 4, 1931.]

SPOKANE INTERNATIONAL RAILWAY COMPANY, *Appellant,*
v. THE STATE OF WASHINGTON, *Respondent.*[1]

[1]Reported in 299 Pac. 362.

396

*Alex M. Winston,* for appellant.

*The Attorney General* and *V. D. Bradeson,* for respondent.

FULLERTON, J.—In this action, the appellant, Spokane International Railway Company, sought to recover from the state of Washington the amount of a tax levied upon its franchise by the state, and which it had paid under protest. A general demurrer was interposed to its complaint, which the trial court sustained. The appellant refused to plead further, whereupon the court entered a judgment against it, dismissing its action with prejudice.

The facts following are gathered from the complaint. The appellant is a corporation organized under the laws of the state of Washington as a common carrier of passengers and freight in intrastate, interstate, and foreign commerce. Its principal place of business is at the city of Spokane. It owns and operates a line of railway, commencing in the city named and extending in an easterly direction into the state of Idaho, from which place it extends in a northerly direction to the international boundary line. The business of the company in the state of Washington is approximately six per cent of its entire business, and the value of its property within the state of Washington is approximately fifteen per cent of the total value of its property. It has an authorized capital stock of $4,200,000.

The tax which the appellant seeks to recover was levied pursuant to the act of the legislative assembly of 1929 (Laws 1929, ch. 227, p. 631). The provisions of the act pertinent to the question involved, are found in

sections 4 and 5 thereof. Section 4, in part, reads as follows:

"Every corporation organized under the laws of this state, except the corporations for which existing law provides a different fee schedule, shall pay, on or before the first day of July of each and every year, to the secretary of state, for the use of the state, an annual license fee of fifteen ($15.00) dollars for the first fifty thousand ($50,000.00) dollars or less of its authorized capital stock; and one-fortieth (1/40) of one per cent (1%) additional on all amounts in excess of fifty thousand ($50,000.00) dollars, and not exceeding one million ($1,000,000.00) dollars; and one one-hundredth (1/100) of one per cent (1%) additional on all amounts in excess of one million ($1,000,000.00) dollars, and not exceeding four million ($4,000,000.00) dollars; and one two-hundredth (1/200) of one per cent (1%) additional on all amounts in excess of four million ($4,000,000.00) dollars; but in no case shall an annual license fee exceed the sum of twelve hundred fifty ($1,250.00) dollars; . . . "

Section 5, in part, reads:

"All foreign corporations doing intrastate business, or hereafter seeking to do intrastate business in this state shall pay for the privilege of doing such intrastate business in this state the same fees as are prescribed for domestic corporations for annual license fees in the preceding section, such fees to be computed upon the proportion of the capital stock represented or to be represented by its property and business in this state to be ascertained by comparing the entire volume of business with the volume of intrastate business in this state. . . . "

It will be observed, by a comparison of the quoted parts of the cited sections, that a domestic corporation, that is, a corporation organized under the laws of this state, is required to pay a license fee based on the whole of its authorized capital stock, regardless of the situation of its property, while a foreign corporation,

that is, a corporation organized under the laws of a sister state, and doing business in this state of an intrastate character, is required to pay a fee computed on that proportion of its capital stock, ascertained by comparing its entire volume of business with the volume of business it does in this state.

A foreign corporation, to illustrate, situated as the appellant is situated, having the same capital stock, and doing the same character and volume of business the appellant is doing, proportioned between this state and the state of Idaho, as the appellant's business is proportioned, would be required, under the terms of the statute, to pay a license fee on one-sixth of its capital stock, whereas the appellant is required to pay on its entire capital stock. The appellant, of course, has not found a foreign corporation doing in this state an intrastate business whose situation so closely parallels its situation as the illustration assumes, but it alleges that there are a number of foreign corporations doing in this state an intrastate business in competion with its business which pay a license fee based on a proportion of its capital stock less than the whole.

It is the appellant's contention that the act authorizing the tax is void, because violative of both the Federal and state constitutions. It argues that it violates the Federal constitution because, first, it taxes and otherwise burdens interstate commerce, and, second, because it deprives the appellant of the equal protection of the laws; and that it violates the state constitution because it allows a foreign corporation to transact business within the state on more favorable terms than it allows a domestic corporation to transact a like or similar business.

■■ Before noticing the specific questions, it may be well to call to mind the fact that the exaction here imposed is not, and does not purport to be, a direct tax

on the property of corporations coming within its terms. Nor is it an indirect tax on its property, save in the sense that any form of exaction from any business institution, made by the state for revenue purposes, is an indirect tax on its property. In form and in substance, the exaction, as to a domestic corporation, is a tax on its right to be and exist as a corporation under the laws of the state and to transact business within the state; and, as to a foreign corporation, the exaction is a tax on the privilege the state has granted it to transact business within the state. Neither of these exactions is a direct tax on property, and in determining their validity, they are not to be measured by the rules relating to direct taxation.

Tested by these considerations, we cannot conceive that the exaction is in any sense a tax on interstate commerce. Obviously, it is not a tax upon the privilege of engaging in such commerce, nor a tax on the business which constitutes it or the receipts derived from such business. In so far as it applies to domestic corporations, it is a tax levied alike upon all of them. The nature or character of the business in which they engage is not taken into account in fixing the amount of the tax. Whether the business of the corporation be wholly intrastate, wholly interstate, or whether it be in part intrastate and in part interstate, the fact does not weigh in determining the amount of the tax. The tax is upon the privilege the state grants to the corporation to engage in commerce with the advantages derived from a corporate organization, not upon the commerce itself. As to foreign corporations, it is a tax which the state exacts from the corporation for the privilege of doing an intrastate business, not for doing an interstate business.

The question involved is a Federal question, on which the pronouncements of the Federal supreme court are

authoritative, and that court, as we read its decisions, has upheld a similar state statute. The state of Kansas enacted a statute similar in purport and effect to the statute here in question. It was assailed in the supreme court of Kansas on the ground that it imposed an unlawful exaction on interstate commerce. That court refused to sustain the contention *(Kansas City, Ft. S. & M. Co. v. Sessions,* 95 Kan. 261, 147 Pac. 791), saying:

"The fee collected is a tax upon the right of corporate existence—the franchise granted by the state to be a corporation—to do business with the advantages associated with that form of organization."

The cause was taken to the supreme court of the United States on a writ of error, where the judgment of the Kansas supreme court was affirmed. *(Kansas City, Ft. S. & M. Co. v. Kansas,* 240 U. S. 227.) In the course of its opinion, the court said:

"Examining the statute in the present case, we see no reason to doubt the accuracy of the description of the tax by the state court. We take it to be simply a tax on the privilege of being a corporation,—on the primary corporate franchise granted by the State. The authority of the state to tax this privilege, or franchise, has always been recognized and it is well settled that a tax of this sort is not necessarily rendered invalid because it is measured by capital stock which in part may represent property not subject to the State's taxing power. Thus, in *Society for Savings v. Coite,* 6 Wall. 594, 606, 607, the power to levy the franchise tax was deemed to be 'wholly unaffected' by the fact that the corporation had invested in Federal securities; and in *Home Ins. Co. v. New York,* 134 U. S. 594, 599, 600, it was held that a tax upon the privilege of being a corporation was not rendered invalid because a portion of its capital (the tax being measured by dividends) was represented by United States' bonds. These cases were cited with distinct approval, and the rule they applied in distinguishing

between the subject and the measure of the tax was recognized as an established one, in *Flint v. Stone Tracy Co.,* 220 U. S. 107, 165. It is also manifest that the State is not debarred from imposing a tax upon the granted privilege of being a corporation, because the corporation is engaged in interstate as well as intrastate commerce. *Delaware Railroad Tax,* 18 Wall. 206, 231, 232; *State Railroad Tax Cases,* 92 U. S. 575, 603; *Philadelphia & Southern S. S. Co. v. Pennsylvania,* 122 U. S. 326; *Ashley v. Ryan,* 153 U. S. 436; *Cornell Steamboat Co. v. Sohmer,* 235 U. S. 549, 559, 560. And, agreeably to the principle above mentioned, it has never been, and cannot be, maintained that an annual tax upon this privilege is in itself, and in all cases, repugnant to the Federal power merely because it is measured by authorized or paid-up capital stock. The selected measure may appear to be simply a matter of convenience in computation and may furnish no basis whatever for the conclusion that the effort is made to reach subjects withdrawn from the taxing authority.''

■ The contention of the appellant that the act denies to it the equal protection of the laws is founded on the fact that it is required to pay a tax based upon its entire capital stock, whereas a foreign corporation doing a like and similar business of equal volume pays on a different standard of measurement, which may make the tax of the foreign corporation less than its tax. But this objection, also, has been met and determined adversely to the appellant's contention by the authoritative court. In *Kansas City, M. & B. R. Co. v. Stiles,* 242 U. S. 111, the court had before it a statute of the state of Alabama, which contained provisions similar to our own, in that it made a difference in the amounts of the tax exacted for doing business in the state as between foreign and domestic corporations. It was objected to the statute that it denied to the domestic corporation the equal protection of the

laws. Speaking to the question, the court used this language:

"There is no denial of equal protection of the laws because a state may impose a different rate of taxation upon a foreign corporation for the privilege of doing business within the state than it applies to its own corporations upon the franchise which the state grants in creating them."

In *Cheney Brothers Co. v. Commonwealth of Massachusetts,* 246 U. S. 147, the court, after quoting from language used by it in the prior case of *Southern R. Co. v. Greene,* 216 U. S. 400, said:

"Assenting, as we do, to what was thus said, it suffices to add, first, that a state does not surrender or abridge its power to change and revise its taxing system and tax rates by merely licensing or permitting a foreign corporation to engage in local business and acquire property within its limits, and, second, that 'a state may impose a different rate of taxation upon a foreign corporation for the privilege of doing business within the state than it applies to its own corporations upon the franchise which the state grants in creating them.' *Kansas City, Memphis & Birmingham R. R. Co. v. Stiles,* 242 U. S. 111, 118."

These cases, as we understand them, proceed on the theory that there is a taxable interest in the one not present in the other—that the domestic corporation may not only be taxed on the privilege granted to it to do business in a corporate form within the state, but may be taxed on its franchise which the state grants it to exist as a corporation, while the foreign corporation may be taxed only on the privilege the state grants it to do business within its borders, and that these differences warrant the state in taxing them in a different manner. As was said by Mr. Justice Bradley in *Bell's Gap R. Co. v. Pennsylvania,* 134 U. S. 232:

"The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction

the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution.''

In so far as the Federal constitution is concerned, therefore, it is not to deny to a domestic corporation the equal protection of the laws to tax it in a different manner than a foreign corporation doing a like and similar business within the state is taxed, even though the manner in its final result may be to exact a greater tax from the one than is exacted from the other, when measured by the volume of business done by each of them.

Our case of *State v. Northern Express Co.*, 80 Wash. 309, 141 Pac. 757, in which we refused to hold a similar statute unconstitutional at the suit of a foreign corporation, is decisive of the question, in so far as it can be determined by a state court. In that case, it appeared that the state, in addition to levying a tax on the tangible property of foreign corporations doing business in this state, levied a tax on the privileges it had granted to them to do such business. The statute was assailed on the ground that it was, in effect, a tax on interstate commerce, but we held to the contrary, overruling a prior decision of a department

of the court sustaining the contention. (State v. Northern Express Co., 76 Wash. 636, 136 Pac. 1160.) The tax, it is true, was measured by a different standard than the tax here involved is measured, but this in no way affected the principle involved.

The provision of the state constitution thought to be violated by the statute in question reads as follows:

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state." Art. XII, § 7.

The statute, it must be remembered, is an exercise of the taxing power by the state. It must be remembered, also, that, before a taxing statute is held to be in violation of the fundamental law, it must be so clearly so that no other rational conclusion can be reached. Turning to the statute, and reading it in connection with the other taxing statutes of the state applicable to both foreign and domestic corporations, it is made clear that each of the corporations is taxed on all the property they hold in the state that is common in character; that is to say, they are taxed on their real property, taxed on their tangible personal property, and taxed on their right to transact business within the state. Obviously, this property (ignoring intangible personal property which the state does not tax) is all of the property which a foreign corporation has in the state, or can bring into the state, which is subject to taxation.

But it is not so with the domestic corporation. It has an additional element of property in the state subject to taxation which the foreign corporation has not, namely, the right the state has granted it to exist as a corporation. When, therefore, the state taxes the cor-

porations alike upon all of the property of a common character which they own and hold within the state, and, in addition thereto, taxes the domestic corporation on the right granted it by the state to exist as a corporation, it does not allow a foreign corporation to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of the state.

The argument of the appellant that a foreign corporation, having the tangible property it possesses and doing precisely the same amount and character of business, would pay only one-sixth of the taxes it is required to pay, even if the assumption of fact the argument involves is accurate, is beside the question. Undoubtedly, it would pay a less tax to the state of Washington than the appellant pays, but the reason for the difference, as we have hereinbefore pointed out, lies in the fact that the supposed corporation would have less property within the state than has the local corporation, and it is this consideration that warrants the greater tax.

It is our opinion that the trial court did not err in its conclusions. Its judgment will therefore stand affirmed.

TOLMAN, C. J., MILLARD, BEELER, and BEALS, JJ., concur.