**CHICAGO, M., ST. P. & P. R. CO. v. HEDGES et al., and four other cases.**

Nos. 511E–514E, 517E.

District Court, W. D. Washington, S. D.

Dec. 14, 1933.

F. M. Dudley, O. G. Edwards, and A. J. Laughon, all of Seattle, Wash., for complainant Chicago, M., St. P. & P. R. Co.

Thomas Balmer and Edwin C. Matthias, both of Seattle, Wash., for complainant Great Northern Ry. Co.

A. C. Spencer, of Portland, Or., F. T. Merritt, of Seattle, Wash., and F. J. Betz, of Portland, Or., for complainant Oregon-Washington R. & Nav. Co.

L. B. da Ponte, of Seattle, Wash., J. W. Quick, of Tacoma, Wash., and Thos. H. Maguire, of Seattle, Wash., for complainant Northern Pac. Ry. Co.

Thomas Balmer and Edwin C. Matthias, both of Seattle, Wash., for complainant Spokane, Coeur d'Alene & P. Ry. Co.

G. W. Hamilton, Atty. Gen., of Washington, and R. G. Sharpe, Asst. Atty. Gen., of Washington, for defendants.

Before GARRECHT, Circuit Judge, and CUSHMAN and NETERER, District Judges.

NETERER, District Judge.

These cases have been consolidated for hearing upon the applications for interlocutory injunction and upon the motions to dismiss. The relief sought by each is to restrain the defendants from enforcing or collecting the excise tax of 1½ per cent. of complainants' gross receipts from intrastate business, as provided by chapter 191, p. 869, Laws of Washington, 1933, an act relating to taxation. The allegations in all of the bills of complaint are similar.

754

■ An understanding of the background of the various complainants with relation to the interstate commerce rate for carriage to meet all requirements and authorized by the Interstate Commerce Commission (a rate-governing body whose official duty the court must presume was properly discharged) is necessary. A rate was in force at and prior to the enactment of the challenged act and under the prior system of taxation, and the effect of the change thereof upon the complainants' intra and interstate revenues and the laws and Constitution of Washington with relation to the railroads should be noted.

For brevity, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company will be referred to as the Milwaukee; the Great Northern Railroad Company, as the G. N.; the Oregon-Washington Railroad & Navigation Company, as the O-W; the Northern Pacific as the N. P.; and the Spokane, Coeur d'Alene & Palouse Railway Company as the S. C. P.

All of the complainants are engaged as common carriers in transportation of passengers and property, intra and inter state. The Milwaukee is a corporation of the state of Wisconsin; the G. N. is a Minnesota corporation; and the O-W is an Oregon corporation. The Milwaukee operates a steam railway system extending from Chicago into the states of Wisconsin, Minnesota, South Dakota, North Dakota, Montana, Idaho, and Washington, with main lines and branches in and extending into the states of Michigan, Indiana, Missouri, and Iowa. The N. P. operates a system of steam railways extending from a point on Lake Superior in Wisconsin, through the states of Minnesota, North Dakota, Montana, Idaho, and Washington, with lines into the state of Oregon and the Dominion of Canada. The G. N. operates a system of railway lines and branches having eastern termini at St. Paul and Duluth in the state of Minnesota, and Superior in the state of Wisconsin, and extending westerly from said termini through the states of Minnesota, North and South Dakota, Iowa, Montana, Idaho, Washington, Oregon, California, and the Dominion of Canada, with western termini at Seattle and Tacoma in the state of Washington, Portland in the state of Oregon, and Vancouver in the province of British Columbia, and is now engaged in the transportation of passengers and freight intra and inter state and the United States mail. The O-W operates a system of steam railways situated in the state of Oregon, Washington, and Idaho in intra and inter state commerce. The S. C. P., a local corporation, operates an electric interurban railway extending from Spokane, Washington, easterly to Coeur d'Alene and Hayden Lake in the state of Idaho, and from Spokane southerly to Colfax, Wash., and to Moscow, Idaho.

■ The corporate situs of the complainants upon tax issues bear different relations. Local corporations are differently related to the state than foreign corporations. Great Northern R. Co. v. State, 147 Wash. 630, 267 P. 506; Spokane International Ry. Co. v. State, 162 Wash. 395, 299 P. 362. And all have other statuses than the N. P., operating under a federal franchise (13 Stat. 365). Lasby et al. v. Burgess, 76 Mont. 452, 248 P. 190. By Act February 28, 1919 (40 Stat. 1204), Congress referred to the N. P. R. R. Co. as the predecessor in interest of the complainant N. P. Ry. Co. In Northern Pacific Ry. Co. v. Townsend, 190 U. S. 267, 23 S. Ct. 671, 47 L. Ed. 1044, it is said that the N. P. Ry. Co. succeeded to the property of the N. P. R. R. Co. See, also, Northern Pac. Ry. Co. v. Ely, 197 U. S. 1, 25 S. Ct. 302, 49 L. Ed. 639.

It is strongly contended in the reply brief that the tax could in no way attach to the N. P. complainant as it would be a tax on a federal franchise, and that it impairs obligation of a contract with the United States. Neither of these objections apply to the relation and status of the N. P., on the record and history in this case.

Due consideration has been given to the cases cited by complainants and the defendants, including those in the reply briefs. The conclusion which is inevitably forced upon the court is that they are not decisive upon the issue here. These instant cases are distinguished from the cases, as is later shown, but undue extension of this memo forbids an analysis of the cases, and urgency for speedy conclusion, for reasons which later appear, inhibit more extended discussion.

■ The defendants Hedges and Jenner are members of the state tax commission of Washington, a continuing board composed of three members, of which defendants have been appointed and qualified, are citizens of Thurston county within the Southern division of the Western district of Washington, and organized by virtue of chapter 18, p. 33, Laws of Washington 1925, and amendatory acts, two members of the board to constitute a quorum to transact business, and, as such board, are charged with the duty of enforc-

ing the provisions of and collecting the tax imposed by virtue of the challenged act.

We think the court has jurisdiction, and the motion to dismiss on that ground is denied. The motion of the defendants to dismiss for want of equity admits as true all matter well pleaded, unless the contrary is judicially known. The Circuit Court of Appeals of this circuit, in Gleeson v. Imperial Irr. District, 59 F.(2d) 529, 530, said: "When a pleader states matter as fact which is out of harmony with facts which the court judicially knows, the averments in the pleading are disregarded. Jones v. United States, 137 U. S. 202, 11 S. Ct. 80, 34 L. Ed. 691; Pearcy v. Stranahan, 205 U. S. 257, 27 S. Ct. 545, 51 L. Ed. 793; Middlesex Transportation Co. v. Pennsylvania R. Co., 82 N. J. Eq. 550, 89 A. 45; Heiskell v. Knox County, 132 Tenn. 180, 177 S. W. 483, Ann. Cas. 1916E, 1281; McSween v. State Live Stock Sanitary Board, 97 Fla. 750, 122 So. 239, 65 A. L. R. 508. Judicial knowledge is taken of all matters generally known. * * * And the court is bound to take notice of public facts and geographical positions, and also populations of cities and counties, public documents, reports of Commissions made to Congress, and proceedings thereon, etc. The Apollon, 22 U. S. (9 Wheat.) 362, 6 L. Ed. 111, and of public activities within the common experience of men within the jurisdiction, and more especially of public conferences and meetings of members of a community of common interest and wide concern of which the court ought to have known. Brown v. Spilman, 155 U. S. 665, 670, 15 S. Ct. 245, 39 L. Ed. 304. And if the judge's memory is at fault he may resort to means he may deem safe to refresh his memory. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200." See, also, Arizona v. California, 283 U. S. 423, 51 S. Ct. 522, 75 L. Ed. 1154.

■ By the same token, the court may, and it is its duty to, advise itself of public records required by law to be made and kept unfolding the status and relation of tax assessments of the litigants, pertaining to the instant issue, in considering the motion to dismiss and the motion for interlocutory injunction. The court may, and in the instant case obviously must, to determine the equities of the litigants, in view of the charges made in the several bills of complaint, advise itself of the assessments made against the properties of the several complainants prior to the change of the taxation system, and the enactment of the challenged law, an "emergency measure" to meet a condition because of the economic stress in the change of the revenue system.

The act in issue is for a brief period (2 years), and imposes a tax of $167,604, and the new revenue laws of which this act is a part reduces the taxes of complainant from $1,676,512 to $938,637, or a gain to complainants of $737,825. Public stress, neutralization of threatened dangers, rioting, defiance of processes, closing of the public schools for want of funds to carry on, and shifting of public burdens in a changing revenue system, and placing additional burdens ($737,-825) upon those less able to bear them, and to the credit of the complainants who have not complained, heretofore, that $1,676,512 was a burden to interstate commerce, or made application to the Interstate Commerce Commission for relief, at a time when conditions evidently produced by the collapse of the credit system present "a condition and not a theory," requires critical, very critical, consideration of the claims made before adjudicating impotency of the Legislature to relieve the pressure of public stress for a brief time by invalidating this "emergency measure" to supply needed revenue for governmental functioning, unless such duty is plain.

The crisis before the Legislature is thus expressed by the Supreme Court in holding valid the act in issue in State ex rel. Stiner v. Yelle (Wash.) 25 P.(2d) 91, 95: "The state is facing stark necessity. The Legislature has earnestly endeavored to meet this critical situation. This law is, perhaps, not perfect. No tax law yet devised has been entirely fair and just to all in its practical workings. This is an emergency measure limited by its terms to a two-year period. If it works injustice to some, it will be but temporary, and such temporary injustice, if any, must be borne for the common good."

■ That abnormal conditions because of economic stress require emergency measures is no longer open to doubt. In Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 460, 65 L. Ed. 865, 16 A. L. R. 165, Justice Holmes for the court said: "A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change."

■ In People ex rel. Durham v. La Fetra, 230 N. Y. 429, 130 N. E. 601, 606, 16 A. L. R. 152, Pound, J., stated that emergencies, even in times of peace "may, as the alternative of confusion or chaos, demand the enactment of laws that would be thought arbitrary under normal conditions." Laws are

merely rules of civil conduct for the common good, and must be considered in somewhat the same relation as civil contracts in times of stress or emergency for the common welfare, and as "contracts are made subject to the exercise of the power of the state when otherwise justified," so the constitutional limitations are elastic to the exercise of the legislative powers to avoid domestic confusion or epidemy or social disruption or economic chaos. Johnson v. Duncan, 3 Mart. (O. S.) (La.) 530, 6 Am. Dec. 675. Unprecedented unemployment, many thousands of people dependent upon charity, mortgage foreclosures, and entering of deficiency judgments, loss of homes, closing of public schools, and unsettling of family ties and social contacts, are all fraught with dangers which go to the very existence of government.

The motion to strike the Jenner affidavit is denied, and portions thereof will be considered as exposition of public records made and kept by authority of law, of which it speaks, and which the court may notice.

To change its taxing system, the electors of the state, by initiation, adopted chapters 4 and 5, pp. 47, 49, Laws of Washington 1933 (40-mill levy limit on real estate and the income tax measure), and the Legislature, the act in issue, an "emergency measure," as a new taxing system. The preamble to chapter 5, p. 49, Laws of 1933, exposes the state of mind as follows:

"Existing methods of taxation, primarily based on property holdings, are inadequate, inequitable and economically unsound. Present conditions point the need of a new subject matter for taxation, which should be based on the ability to pay. Earnings for a given period are a fair measure of such ability.

"The people of the State of Washington, therefore, exercising herein their supreme power and fundamental right, declare their purpose hereby to tax all annual incomes within the state as such, and not as property." Laws 1933, c. 5, p. 49, § 1.

The Supreme Court of the state held this Income Tax Law unconstitutional [Culliton v. Chase (McKale's, Inc., v. Chase) 25 P. (2d) 81], and thus deprived the state of a portion of its revised system, and further disorganized the revenue situation. The 40-mill limit tax on real property authorized by chapter 4, p. 47, Laws of 1933, is grossly inadequate and the need of the "emergency measure," and the act in issue, chapter 191, p. 869, Laws of 1933, effective from August 1, 1933, to July 31, 1935, became vital; and,

in considering this issue, chapter 166, p. 613, Laws of 1933, should be noted. The state Supreme Court sustained the act in issue in State ex rel. Stiner v. Yelle, September 8, 1933 [25 P.(2d) 91, 95]. At page 95 of 25 P.(2d), the court said: "The act does not offend against either the Federal or the State Constitution." It is admitted that income from interstate commerce cannot be taxed, and that the percentage must be computed on intrastate business.

Consideration of the new system to supersede the old, and the status of the litigants under the old system, and the traffic rates approved by the rate-making body, the Interstate Commerce Commission, which must be presumed as sufficient for interstate commerce, is enlightening. May it be said that any burden has· been placed on interstate commerce by the challenged act, when, as later particularized, the new system, including the excise law (term used merely for designation) in issue, commerce, intra and inter state, has been relieved of $737,825 taxes?

The principle that these laws must be considered together is approved in Baker v. Druesedow, 263 U. S. 137, 44 S. Ct. 40, 68 L. Ed. 212, and cited cases; Greene v. Louisville & I. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280; Gregg Dyeing Co. v. Query, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831. If the state has not, by all of its taxation legislation, burdened interstate commerce, it may not be criticized. Hebert v. Louisiana, 272 U. S. 312, 47 S. Ct. 103, 71 L. Ed. 270, 48 A. L. R. 1102; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160. The state has the right to tax property used in interstate commerce. Pullman's Palace-Car Co. v. Pennsylvania, 141 U. S. 18, 11 S. Ct. 876, 35 L. Ed. 613; Ficklen v. Shelby County, 145 U. S. 1, 12 S. Ct. 810, 36 L. Ed. 601; United States Express v. Minnesota, 223 U. S. 335, 32 S. Ct. 211, 56 L. Ed. 459. See, also, Wells Fargo & Co. v. Nevada, 248 U. S. 165, 39 S. Ct. 62, 63 L. Ed. 190; Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 S. Ct. 373, 62 L. Ed. 827; Southern Railway Co. v. Watts, 260 U. S. 519, 43 S. Ct. 192, 67 L. Ed. 375. In rate-making, state taxes have always been deemed proper operating expenses. Railroad Commission v. C. B. & Q. R. Co., 257 U. S. 563, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086. The state does not deny equal protection of its laws or burden interstate commerce by adjusting its taxing system in ·

such a way that some taxes may appear for a limited time to be an apparent burden on interstate commerce. Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; McLean v. Arkansas, 211 U. S. 539, 29 S. Ct. 206, 53 L. Ed. 315; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679.

The plaintiffs are receiving all of the revenue they received prior to the act in issue, with no added burden on interstate commerce, or at all. No burden could be placed upon interstate commerce by the changed taxing system, if the tax has been lessened and no reduction of tariff rates made, as in this case.

Under the old taxing system the ad valorem tax for 1933 would have been: N. P., $700,086; G. N., $460,684; O-W, $272,507; Milwaukee, $238,705; S. C. P., $4,530—total, $1,676,512.

The ad valorem tax levy, under the new system, for 1933 is: N. P., $221,992; G. N., $211,884; O-W, $125,335; Milwaukee, $109,788; S. C. P., $2,884—total, $771,083. The excise taxes (for designation) estimated by complainants are: N. P., $90,000; G. N., $46,500; O-W, $11,250; Milwaukee, $19,350; S. C. P., $504—total, $167,604.

The total ad valorem and excise (designated) taxes for 1933 are: N. P., $411,992; G. N., $258,384; O-W, $136,585; Milwaukee, $129,138; S. C. P., $2,588—total, $938,637; saving, under the new system, with the excise taxes under the act in issue included, to: N. P., $288,094; G. N., $202,300; O-W, $135,922; Milwaukee, $109,537; S. C. P., $1,942—a total of $737,825.

■ The levy for 1933, under the old system, as seen, totals $1,676,572, distributed as stated. No application was made for relief from the tax (old system to the Interstate Commerce Commission for increase of notes), and until relief is sought and denied, and since taxes are greatly reduced by the new system, complainants may not be heard to claim burden to their interstate business in violation of the commerce clause in the instant case. Postal Telegraph-Cable Co. v. Fremont, 255 U. S. 124, 41 S. Ct. 279, 65 L. Ed. 545.

The levy for the five complainants for 1933 under the new system totals $771,083, and the estimated excise tax under the challenged act, fixed by the plaintiff, totals $167,604. Obviously complainants "suffer no harm from the provisions of the statute." Osborne v. Florida, 164 U. S. 650, 17 S. Ct. 214, 216, 41 L. Ed. 586. The net saving to the complainants, under the new system, including the excise tax, is $737,825. The excise tax is in no event a direct charge against interstate commerce, and, if it indirectly affects it, it is not forbidden. Oliver Iron Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; State v. Express Co., 80 Wash. 309, 141 P. 757.

■ This does not take cognizance of benefits to the complainants of the Motor Truck Act (chapter 166, p. 613, Laws 1933), curtailing truck competition and increasing the traffic revenues for the complainants' roads. Instead of taking from other states and contributing to the state of Washington, as contended by complainant in argument, there is actually taken from the taxpayer and patrons of the complainants' roads in the state of Washington, $737,825 to apply in other states. Assuredly, complainants may not invoke the Fourteenth Amendment. Gant v. Oklahoma City, 289 U. S. 98, 53 S. Ct. 530, 77 L. Ed. 1058. The status of the litigants at the time of the enactment of the laws changing the taxing system, and the protecting arm extended to complainants of the Interstate Commerce Commission, as given, must obtain until the changed system is completed, or relief sought from Interstate Commerce Commission. Postal Telegraph-Cable Co. v. Fremont, supra. That the legislators studiously avoided burdening interstate commerce is obvious.

"In computing the amount of any tax imposed under subdivisions (2) (c), (2) (d), (2) (e) and (2) (f) of section 2 of this act, there shall be excepted from gross proceeds of sales or gross income so much thereof as is derived from * * * business which the State of Washington is prohibited from taxing under the constitution of this state or the constitution or laws of the United States. * * * " Section 5, pp. 879, 880, Laws 1933.

"If any clause, sentence, paragraph, subdivision, section or part of this act shall for any reason be adjudged invalid, such judgment shall not affect, impair, or invalidate the remainder of the act, but shall be confined in its operation to the clause, sentence, paragraph, subdivision, section or part thereof directly involved in the controversy in which such judgment shall have been rendered. * * * " Section 30, p. 896, Laws 1933.

That the Motor Truck Act, supra, is of benefit to the complainants is manifest on the face of the act, and that it was considered so by the complainants is shown by the appearance of some of the complainants' attorneys

as amici curiæ in cases before the statutory court (section 266, Jud. Code [28 USCA § 380]) when the constitutionality of the act was challenged by a number of motorbus operators.

The contention that the law must fail for that intra and inter state business of the complainants is so inseparably interwoven that interstate business cannot be renounced, is not convincing. Equity does not require a useless thing. The complainants would not renounce intrastate business, which is: N. P., $6,613,958.98; interstate, $6,-231,366.63. O-W., intrastate, $779,676.88; interstate, $3,026,256.60. Milwaukee, intrastate, $1,171,236.56; interstate, $2,163,054.-27. G. N., intrastate, $1,860,608; interstate, $2,616,837. S. C. P., intrastate, $81,568.98; interstate, $1,333,410.73. Such claim, in the face of the history and record in the case, is fallible. Ohio Tax Cases, 232 U. S. 576, 34 S. Ct. 372, 58 L. Ed. 737; Gant v. Oklahoma City, supra. While these cases are not directly in point, they are lucid and bear upon the history in the instant issue. Complainants' claim is narrow and without equity, and does not weigh upon conscience. No attempt has been made to renounce, nor purpose to do so, and, until this is done, complainants cannot complain. No right is withheld or denied. The laws and Constitution of the state give way to the commerce clause of the United States Constitution (art. 1, § 8, cl. 3), and the vitalizing Commerce Act (49 USCA § 1 et seq.). See Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 70 L. Ed. 878. And the rate-making body could and would afford relief, and, if denied, complaint might be available.

Nor can we conclude that complainants' revenues, when equitably apportioned, and application of the expense of intrastate operation, are greater than the revenues from intrastate commerce. Upon the record the contrary appears, the Jenner affidavits not being denied after opportunity was afforded.

Common sense in approaching the issue must dictate what reasonable men would do under like circumstances. Upon the record a person may reasonably assert that the new taxing system has relieved every complainant, and the Motortruck Act can be given a like earmark, and because of the emergency excise act in issue and the failure of the income tax law and the chaotic conditions, upon the relative history and status of the various complainants, the conscience of the chancellors may not be moved.

In all of the cases cited principles are announced for the purpose of illustration in their relation to a particular point, but their bearing upon other cases must be considered with circumspection. Chief Justice Marshall, in Cohens v. Virginia, 19 U. S. (6 Wheat.) 264, 399, 5 L. Ed. 257, said: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." See, also, Myers v. U. S., 272 U. S. 52, 47 S. Ct. 21, 71 L. Ed. 160.

These cases are in a class by themselves. There is none in the books like them. The claim of the complainants that they have no adequate remedy at law, if the tax is paid and the law declared invalid, in that it would require a multiplicity of suits, and no money be paid without legislative appropriation and no appropriation being made, they are without an adequate remedy, and in this it would seem that the claim is well founded.

Judge Dietrich, just before his decease, in an opinion adopted by the appellate court after his decease, said: "No court of equity will, therefore, allow its injunction to issue to restrain their action, except when it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is a real estate, throw a cloud upon the title of the complainant, before the aid of a court of equity can be invoked." Port Angeles Western Ry. Co. v. Clallam County, Wash. (C. C. A.) 44 F. (2d) 28, 30.

The Circuit Court of Appeals in Skagit County v. N. P. Ry. Co., 61 F.(2d) 638, 86 A. L. R. 1012, has held that, where the state has empowered counties to levy personal property taxes, it cannot by statute, inhibiting injunction to restrain collection of such taxes, deprive a court of equity of jurisdiction in proper cases to restrain collection of

excessive taxes, and held that, under the tax law of the state, to be relegated to payment of taxes, suit to recover would involve a multiplicity of suits, and did not afford a speedy and adequate remedy at law. See, also, Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822.

██ A careful consideration of the cases convinces us that interstate commerce is not so burdened as to justify a finding that the law is unconstitutional on the issue presented. Postal Telegraph–Cable Co. v. Richmond, 249 U. S. 252, 39 S. Ct. 265, 63 L. Ed. 590. The appropriation, however, of $10,-000 (section 28 of the act in issue) is insufficient and does not afford the complainants a speedy and adequate remedy.

In view of the importance of this litigation and the "stark necessity," as stated by the state Supreme Court, and the extra burden which would be cast upon the man with the hammer and the hoe, or the plow and the plane, mechanic and merchant, and the industries of the state, all of whom contribute to the support of the complainants by payment of transportation charges, etc., and taxes for the maintenance of the state government, whose protection and benefits the complainants enjoy, and the Legislature being now in extraordinary session, for the common good the court will withhold disposal order during the present legislative session to afford the Legislature opportunity to amend section 28, supra, by making adequate appropriation to meet the requirements, and, if so made, interlocutory injunction will be denied; otherwise, it must be granted and the motion to dismiss denied. In the event the appropriation is not made, it is suggested that the issues be speedily joined, and the cause will be referred to a special master to take the testimony and make his findings and conclusions to the court, unless the parties can stipulate to the facts.

Exigency has unduly pressed the preparation of this memo.

GARRECHT, Circuit Judge, concurs.

CUSHMAN, District Judge (concurring in denial of interlocutory injunction).

It is necessary to add but little by way of statement to that contained in the majority opinion to make clear my conclusion in these cases.

The statute attacked, chapter 191 of the Washington Laws of 1933, p. 869 (Remington's Revised Statutes of Washington, § 8326 —1 et seq.) makes provision for the imposition of a tax for the privilege of engaging in business activities within the state of Washington, the same being based upon the gross income from such business, in the case of steam railways in the amount of 1½ per cent. and in the case of electric interurban railways .5 per cent. Section 2 (1) (e) and section 2 (2) (e), 3, 4, chapter 191, Laws of 1933, Remington's Revised Statutes of Washington, § 8326—2 (1) (e) and § 8326—2 (2) (e), 3, 4).

In computing such tax it is provided, by section 5 of the act (Rem. Rev. Stat. § 8326—5), that there shall be excepted from gross income so much thereof as is derived from business which the state of Washington is prohibited from taxing under the Constitution of this state or the Constitution or laws of the United States.

By section 31 of the act it is provided: "Sec. 31. This act is necessary for the immediate support of the state government and its existing public institutions and shall take effect immediately."

It is complained that: "Defendants construe said act as not applying to a percentage of gross income from plaintiff's interstate business, but contend that the same applies to the gross income from plaintiff's intrastate business, including revenue received by the plaintiff from the United States Government for the transportation of United States mail, and that plaintiff owes and must pay 1½ percent of said gross income from intrastate business and from the transportation of the United States mails within the State of Washington for the privilege of doing intrastate business in this state."

Upon the hearing the Assistant Attorney General disclaimed for the defendants any interpretation of this statute imposing a tax on any income derived from the carrying of the United States mails. Nothing in support of this bald allegation was offered, and it should be disregarded both upon the application for interlocutory injunctions and the motions to dismiss.

The Supreme Court of the state of Washington has recently considered this law and held the act not to offend against either the Federal or the State Constitutions. State ex rel. Stiner v. Yelle (Wash.) 25 P.(2d) 91.

Any tax paid by complainants is properly to be taken into account in fixing intrastate rates. Citation of authority is not considered necessary. There has been no showing, either in the bills of complaint or affidavits in support of the motions for inter-

locutory injunctions, why complainants are prevented, by an adjustment of their rates, in making provision for the payment of this tax. Gregg Dyeing Co. v. Query, 286 U. S. 472–477, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831. The analogy in this matter of shipper and consumer is not a dangerous one.

The bills of complaint make no disclosure as to income and expense other than for the years 1932 and 1933. It was stated, in effect, upon the hearing, and not disputed, that no application had been made under the Public Service Commission Law to increase rates.

In Ohio Tax Cases, 232 U. S. 576–590, 34 S. Ct. 372, 375, 58 L. Ed. 737, a case wherein a statute of Ohio (which imposed a tax upon the gross intrastate earnings of certain railroads, corporations of that state) was attacked upon the ground that interstate commerce was burdened, it was stated: "Nor do we think that from the facts of the present case it is to be inferred that the franchises of plaintiffs in error are valueless merely because it appears that the *present earnings* of the railroads are not sufficient to pay more than can be derived from legitimate high-grade investment securities that are readily available on the market, or (in the case of one of the roads) are not even sufficient to pay operating expenses. Upon this point we are content to refer to, without repeating, the language employed by Mr. Justice Miller, speaking for this court in State Railroad Tax Cases, 92 U. S. 575, 606, 23 L. Ed. 663, 670." (Italics now supplied.)

Attempt has been made to distinguish the foregoing decision upon the ground that the railroads involved in that case were Ohio corporations. While the state of Washington would have no right to exclude such corporations as complainants, being engaged in interstate commerce, from the state, yet it does have the right to impose a tax on foreign corporations for the privilege of doing business in the state. Citation of authority in support of the foregoing is deemed unnecessary. There is no reason for contending that the interstate commerce carriage by a domestic corporation can be burdened as the result of a state law, and that carried by foreign corporations cannot. Northern Securities Co. v. United States, 193 U. S. 197, 24 S. Ct. 436, 48 L. Ed. 679; State Constitution of Washington, article 12, § 7.

It has been contended on behalf of complainants that the determination of these causes is controlled by the decision of the Supreme Court in Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 453, 70 L. Ed. 878. That was a case wherein the court upheld the action of the Interstate Commerce Commission in authorizing abandonment, both as respects interstate and intrastate traffic, of a branch line of railroad lying wholly within the state of the owning company's incorporation, upon the ground that local conditions were such that public convenience and necessity did not require continued operation, and that such operation would result in large deficits constituting an undue burden upon interstate commerce. This contention of complainants is unwarranted, as shown by the following from that opinion:

"The certificate [of the Interstate Commerce Commission] was granted on the ground that the local conditions are such that public convenience and necessity do not require continued operation; that *for years* operation of the branch had resulted in *large deficits; that future operation would likewise result in large deficits;* that the operating results of the branch are reflected in the company's accounts; that it would have to make good the deficits incurred in operating the branch; and that thus continued operation would constitute an undue burden upon interstate commerce. Abandonment of Branch Line by Colorado & Southern Ry., 72 I. C. C. 315; Id.; 82 I. C. C. 310; Id., 86 I. C. C. 393.

"The application for the certificate was filed *September 1, 1921.* Before any hearing thereon, the state moved that the proceeding be dismissed on the ground, among others, that, as the branch was wholly intrastate, the Commission was without jurisdiction of the application. This objection was overruled. Thereafter the state opposed, on the merits, the granting of the certificate. The case was first heard before division 4 of the Commission on exceptions filed by the company to the examiner's proposed report. *On July 28, 1922, the application was denied, with leave to renew it 'if the improvement in operating results, confidently anticipated by protestants, should not materialize.'* 72 I. C. C. 315. *On May 19, 1923,* the company filed a petition praying that the case be reopened and set for further hearing. Division 4 heard it. *On September 24, 1923,* an order was entered that the certificate issue. 82 I. C. C. 310. A hearing before the full Commission was then sought by the State and the other protestants. Compare United States v. Abilene & Southern Ry. Co., 265 U. S. 274, 281, 44 S. Ct. 565, 68 L. Ed. 1016. The request was granted. On *February 11, 1924,* the order was affirmed with the modification

that the certificate should not take effect until six months from that date. 86 I. C. C. 393. *The effective date of the certificate was later extended to September 11, 1924, and finally to October 11, 1924.* 94 I. C. C. 657, 661.

"Meanwhile, this suit had been begun. The Commission and the company intervened as defendants. On *August 19, 1924,* a decree dismissing the bill on the merits was entered, upon final hearing, without opinion. A motion for a suspension of the order of the Commission pending an appeal was denied. The case is here on direct appeal under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220. The order is assailed as void in so far as it authorizes abandonment and discontinuance of operation in ₊intrastate traffic. The remedy pursued is the appropriate one. See Texas v. Eastern Texas R. R. Co., 258 U. S. 204, 42 S. Ct. 281, 66 L. Ed. 566.

"First. *The main contention of the state is* that the Commission lacks power to authorize the Company to abandon, as respects intrastate traffic, a part of its line lying wholly within the state. The argument is this: *While a railroad cannot, in the absence of express statutory provision or contract, be compelled by a state to continue operating its lines at a loss when there is no reasonable prospect of future profit, and* may, therefore, without such consent, abandon all lines within the state (Brooks-Scanlon Co. v. Railroad Commission, 251 U. S. 396, 40 S. Ct. 183, 64 L. Ed. 323; Bullock v. Florida, 254 U. S. 513, 520, 41 S. Ct. 193, 65 L. Ed. 380; Railroad Commission v. Eastern Texas R. R. Co., 264 U. S. 79, 85, 44 S. Ct. 247, 68 L. Ed. 569), *it has no right to abandon a part of the lines, merely because operation will be attended by pecuniary loss,* and still continue to enjoy the privilege of operating other parts within the state (Chesapeake & Ohio Ry. Co. v. Public Service Commission, 242 U. S. 603, 37 S. Ct. 234, 61 L. Ed. 520; Fort Smith Light & Traction Co. v. Bourland, 267 U. S. 330, 45 S. Ct. 249, 69 L. Ed. 631)." (Italics now supplied.)

In the ruling of the Interstate Commerce Commission of July 28, 1922, to which reference is made by the Supreme Court, it is recited as follows (72 I. C. C. 315–318): "A statement submitted by the applicant covering operations, of the branch line from January 1, 1916, to November 30, 1921, shows operating revenues, $80,603.50; operating expenses, $185,912.74; taxes, $106,716.87; interest, $145,550; total deficit,

$357,576.11. It thus appears that over 70 per cent of the total deficit consists of charges to interest and taxes. The branch line is subject to applicant's first mortgage, under which bonds to the principal amount of $19,400,000 are outstanding, and to its refunding and extension mortgage, under which bonds are outstanding to the principal amount of $28,978,900. * * * "

The present economic emergency is not confined to the state of Washington, but is evidenced by executive action and recent acts of Congress as well. Emergency Railroad Transportation Act of 1933, § 2 (title 49 US CA § 252) is, in part, as follows: "In order to foster and protect interstate commerce in relation to railroad transportation by preventing and relieving obstructions and burdens thereon resulting *from the present acute economic emergency,* and in order to safeguard and maintain an adequate national system of transportation, there is hereby created the office of Federal Co-ordinator of Transportation, who shall be appointed by the President, by and with the advice and consent of the Senate, or be designated by the President from the membership of the Commission. * * * " (Italics now supplied.)

Upon consideration of the emergent nature and limited duration of this legislation (Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165), as disclosed by section 31 of the act (Session Laws of 1933, c. 191, § 31, p. 897), the meager disclosure concerning income and expense made by complainants' bills and affidavits and the changes recently made by the people of the United States as to sources of revenue and by the Legislature in the tax laws of the state, which not only effect a reduction in the ad valorem taxes of complainants (chapter 4, § 1, Laws of 1933, p. 47), but substantially increase the taxes of their competitors (sec. 2 (1) (e), (2) (e) 11, chap. 191, Laws of 1933, Remington's Revised Statutes of Washington, section 8326—2, (1) (e), (2) (e) 11, and section 28, chapter 166, Laws of 1933, Remington's Revised Statutes of Washington, § 6381—28), the court should not undertake to determine what it is asked to do by the bills of complaint. Complainants' case is based upon the presumption that future results will be similar to those already experienced, but such presumption cannot be indulged where there have been so numerous, radical, and far-reaching changes. When such a presumption obtains it depends upon the existence and continuance of the applicable precedent conditions. Any determination now reached, it is clear, would be

based upon little more than conjecture and speculation.

The interlocutory injunctions in these causes should, in my opinion, not only be denied, but the bills of complaint dismissed.

The clerk is directed to notify the attorneys in these suits of the foregoing.